UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MARCUS G. CORDOVA and
PEGGY J. CORDOVA,

    Debtors.                                                     No. 7-12-10756 TA

FRED DE LEON, Individually and
as co personal representatives
of the Estate of Annie Pacheco de Leon;
and DELFINA DE LEON, Individually and
as co personal representatives of
the Estate of Annie Pacheco de Leon,

    Plaintiffs,

v.                                                           Adv. No. 12-1197 T

MARCUS G. CORDOVA and
PEGGY J. CORDOVA,

    Defendants.

## MEMORANDUM OPINION

       Plaintiffs moved for summary judgment that the probate estate they represent has nondischargeable claims against Defendant under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).[1] The basis for the Motion is a state court judgment, which Plaintiffs argue is entitled to preclusive effect and disposes of the adversary proceeding. The Court concludes that summary judgment in Plaintiffs' favor is warranted on Plaintiffs' § 523(a)(4) and (a)(6) claims.[2]

---

[1] Motion for Summary Judgment, filed May 6, 2013, doc. 17 (the "Motion"). Defendant filed an Objection to Motion for Summary Judgment on June 3, 2013, doc. 18 (the "Response"). Plaintiff replied, doc. 21.

[2] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must]

# I. FACTS

The Second Judicial District Court, State of New Mexico (Nash, J.) (the "State Court") entered, inter alia, the following findings of fact in an action captioned *JPMorgan Chase Bank, N.A. v. In re Estate of Annie Pacheco DeLeon, deceased, Peggy J. Cordova, et al.*, No. CV-2008-11615 (the "Foreclosure Action"):[3]

1. Annie Pacheco DeLeon ("Decedent") and her husband Abdon DeLeon owned as joint tenants real property with a street address of 3726 Arno St. N.E., Albuquerque, NM ("Property").

2. The Property is encumbered by a mortgage in favor of JP Morgan Chase Bank ("Chase"), the plaintiff in the Foreclosure Action.

3. Abdon DeLeon died on September 20, 2006.

---

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. B.A.P. 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (Once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[3] The State Court presided over a trial on the merits of Plaintiffs' cross claims against Defendant in the Foreclosure Action. The trial took three days, from December 20-22, 2010. On March 14, 2011, the State Court entered Findings of Fact and Conclusions of Law (the "Findings and Conclusions"), followed on April 4, 2011 by a Final Judgment on First Amended Cross-Claims (the "Judgment").

-2-

4. Decedent was the natural mother of fifteen children. Decedent had five children through her marriage to Julio Montoya (the "Montoya children"). Thereafter Decedent married Abdon DeLeon and had ten children through that marriage, including Kristine D. Sanchez ("Sanchez"), Defendant, and Plaintiffs.

5. Decedent signed a durable power of attorney on March 1, 2005, appointing Defendant as attorney-in-fact and Sanchez as an alternate attorney-in-fact, with powers to commence if and when Decedent became incapacitated or disabled (the "Power of Attorney").

6. Neither Defendant nor Sanchez disclosed or showed the Power of Attorney to Decedent's other children, including Plaintiffs.

7. On or about October 2, 2006, Decedent executed a Living Will and Directive to Physicians; an Advanced Health-Care Directive and Health-Care Power of Attorney; a Last Will and Testament (the "Will"); and a Revocable Protective Trust (the "Trust"), including a power of attorney for Plaintiffs.

8. The Will and the Trust identify all the children from the marriage to Abdon DeLeon by name and make them specific bequests. Among other bequests, the Trust bequeaths Sanchez and Defendant the cancellation of all debts and loans due and owing to the Decedent.

9. The Trust devises the residue of the estate, including the Property, to Plaintiffs, Bernadine DeLeon, and Janice (DeLeon) Polatta.

10. Decedent signed a deed conveying the Property to the Trust, but the deed was not notarized or recorded, and the Trust was never funded.

11. On or about January 25, 2007, Defendant, using the Power of Attorney, executed and recorded a warranty deed conveying the Property to Decedent, Defendant, and Sanchez as joint tenants.

-3-

12. On or about April 26, 2007 Defendant and Sanchez, using the Power of Attorney, executed and recorded a warranty deed conveying the Property from Decedent to Defendant and Sanchez as joint tenants.

13. On April 28, 2007 an action for conservatorship and guardianship of the Decedent was filed in the Bernalillo County District Court, commencing cause no. PQ 2007-105 (the "Guardianship Action").

14. On August 21, 2007 Defendant and Sanchez executed and recorded a Quitclaim Deed transferring the Property to themselves and the Decedent as joint tenants.

15. On October 24, 2007, Ayudando Guardians, LLC was appointed as the guardian of Decedent and the conservator of her estate. The appointment order (the "Guardianship Order") found that Decedent lacked capacity and was in need of the appointment of a guardian to act in her best interests and a conservator to preserve her property.

16. The Guardianship Order was not changed, modified, or rescinded before Decedent's death.

17. On November 9, 2007 the court in the Guardianship Action entered an Order Granting Emergency Motion to Compel Transfer of Real Estate (the "Guardianship Order"), declaring the deeds transferring the Property to Defendant and Sanchez void *ab initio*. The order directed Defendant and Sanchez to reconvey the Property to Decedent.

18. On November 2, 2007, Defendant and Sanchez signed and recorded a Quitclaim transferring the Property to Decedent.

19. On or about January 2, 2008 (two days before Decedent died, and two months after being required to convey the Property to Decedent), Defendant, using the Power of Attorney, signed

-4-

and recorded a Quitclaim Deed transferring the Property to Defendant and Sanchez as joint tenants (the "2008 Deed").

20. On January 4, 2008, Decedent died.

21. On February 4, 2008, an order for informal probate was entered in PB 2008-0077 (the "Probate Action"), appointing Delfina DeLeon as Personal Representative. The case was dismissed without prejudice on March 10, 2008.

22. Chase filed the Foreclosure Action on November 7, 2008 naming as defendants, inter alia, the probate estate, Plaintiffs, Defendant, and Sanchez.

23. Delfina De Leon did not know about the 2008 Deed until she received a copy of the foreclosure complaint.

24. Defendant and Sanchez did not answer the foreclosure complaint.

25. On or about March 11, 2009 Sanchez and Defendant signed and recorded a Quitclaim Deed transferring the Property to Defendant (the "2009 Deed").

26. On April 6, 2009, the Probate Action was reinstated and Plaintiffs were appointed co-personal representatives.

27. Defendant did not turn the Property over to Plaintiffs when the Probate Action was reinstated. Instead, she asserted her right to the Property, so Plaintiffs were forced to file motions to recover the Property.

28. The judge in the Probate Action entered an Order on October 8, 2009 (the "Probate Order") that, inter alia, required Defendant and Sanchez to reconvey the Property to Decedent's estate. Defendant and Sanchez did so.

29. Defendant claimed Decedent wanted the Property in Defendant's name so it could be sold after Decedent's death without probate, and the proceeds divided among Decedent's children.

-5-

Case 12-01197-t    Doc 22    Filed 07/30/13    Entered 07/30/13 10:10:51 Page 5 of 12

Despite this claim, however, Defendant made no attempt to sell the Property between January 2, 2008 and October 8, 2009.

30.     Defendant conveyed the Property to herself for the purpose of self-dealing and self-benefit.

31.     A foreclosure judgment was entered in the Foreclosure Action on February 11, 2010.

32.     Fred De Leon paid Chase a reinstatement fee of $17,848.97, using his personal funds, to reinstate the mortgage and keep the Property from being sold at a public sale.

33.     The Findings and Conclusions contain, inter alia, the following conclusions of law:

a.     Defendant and Sanchez owed Decedent fiduciary duties of loyalty and good faith pursuant to the Power of Attorney and N.M.S.A. § 46(B)-1-114. The fiduciary duties included duties to preserve, maintain, and protect the Property for Decedent's benefit; and

b.     Defendant's actions breached her fiduciary duties to Decedent, her estate, and the estate's beneficiaries.

## II.     DISCUSSION

A.     <u>Collateral Estoppel</u>.     The basis for the Motion is that the Findings and Conclusions and the Judgment are entitled to preclusive effect and resolve all issues in the adversary proceeding. In the *Krietzburg v. Mucci (In re Mucci)*, 488 B.R. 186 (Bankr. D.N.M. 2013), Judge Jacobvitz discussed collateral estoppel/issue preclusion:

> When applying collateral estoppel to a judgment entered by a state court, the Court must look to the law of the state in which the judgment was entered. *See, Jarrett v. Gramling,* 841 F.2d 354, 356 (10th Cir. 1988) (explaining that under the Full Faith and Credit Act, 28 U.S.C. § 1738 (1982), federal courts are required to "give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered.")

(citations omitted); *In re Fordu,* 201 F.3d 693, 703 (6th Cir. 1999) ("When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action.") (citations omitted); *Bugna v. McArthur (In re Bugna),* 33 F.3d 1054, 1057 (9th Cir. 1994) ("in determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the state's law of collateral estoppel.") (citations omitted); *Crum v. Howe (In re Howe),* 2007 WL 1307913, *4 (Bankr. D.N.M. May 2, 2007) (J. McFeeley) ("In giving collateral estoppel effect to a state court judgment, the Court must apply the applicable state law standards for collateral estoppel.") (citation omitted). Under New Mexico law, the party asserting collateral estoppel must establish the following elements:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Central New Mexico Elec. Co–op., Inc.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993) (citing *Silva v. State,* 106 N.M. 472, 474–76, 745 P.2d 380, 382–84 (1987).) If all of these elements are present, the Court must also determine "whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Id.*

488 B.R. at 197-98.

The Court concludes that the Findings and Conclusions and the Judgment are entitled to collateral estoppel effect. The Judgment is a final judgment. It was entered after a three-day trial on the merits. Defendant was a party, and was represented by counsel. The Findings and Conclusions are detailed and specific. Defendant has presented no evidence or argument that the State Court's findings and ruling should not be given preclusive effect, and the Court can find none. Therefore, the State Court's factual findings, if relevant to this proceeding, may not be relitigated.

-7-

B. Section 523(a)(2)(A). This subsection excepts from discharge "a debt for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." The State Court did not enter findings of fact sufficient to grant Plaintiffs summary judgment on this count. Plaintiffs' cross-claims in the Foreclosure Action did not include a fraud claim, so the types of claims encompassed by § 523(a)(2)(A) (false pretenses, misrepresentation, and other varieties of fraud) were not addressed by the State Court. The Motion must be denied with respect to the § 523(a)(2)(A) claim.

C. Section 523(a)(4). Claims under this subsection are "for fraud or defalcation while acting in a fiduciary capacity." The State Court concluded that Defendant was a fiduciary of Decedent's estate. Defendant concedes this. Response, p. 1. The Court will deem this issue determined.

The key question is whether Defendant committed "defalcation" while acting as Decedent's fiduciary. In *Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754 (2013), the Supreme Court enunciated the legal standard for defalcation in § 523(a)(4) proceedings:

> Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). We here consider the scope of the term "defalcation." We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. *We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.*

133 S. Ct. at 1757 (emphasis added).

The State Court found that Defendant breached her fiduciary duties "for the purpose of self-dealing and for self-benefit." In so holding, the State Court overruled Defendant's argument that "Decedent wanted the property deeded to [Defendant] so it could be sold on [Decedent's] death

-8-

and the proceeds divided between her children." Findings and Conclusions, p. 8. This ruling is a finding that Defendant knew "the improper nature" of her actions, or at least was grossly negligent with respect to those actions and her fiduciary duties. Defendant's actions therefore constituted defalcation.

This conclusion is bolstered by the fact that Defendant executed and recorded the 2008 Deed two months after being ordered to return the Property to Decedent. There is no way Defendant could have thought deeding the Property to herself *yet again* comported with her fiduciary duties.

Finally, the State Court found that Defendant did not tell her siblings about the Power of Attorney, did not tell her siblings about the 2008/2009 Deeds, and made no effort to market the Property during the 20 months she owned it after her mother's death. These facts, together with the "self-dealing and self-benefit" finding, leave no doubt Defendant knew full well that her actions breached her fiduciary duties.

Defendant attached the Probate Order and a supporting affidavit to her Response. Based on the attachments, Defendant argues that she did not have the required *scienter* to render the debt nondischargeable under § 523(a)(4). This argument is without merit.

The Probate Order does not raise a fact issue because it is interlocutory and therefore has no preclusive effect. *See Van Auken v Catron*, 2013 WL 596658, at *2 (Ct. App. 2013), citing *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 728, 749 P.2d 1105, 1107 (1988) (preclusion doctrines such as collateral estoppel and res judicata do not apply to interlocutory orders). *See generally In re Nordstrom,* 8 Fed. Appx 823, (9th Cir. 2001) (Ninth Circuit declined to give collateral estoppel effect to an interlocutory order). The interlocutory Probate Order, entered before the merits trial in the Foreclosure Action, cannot be used to question or undermine the Findings and Conclusions.

-9-

Furthermore, the Probate Order does not address the key issue before the Court, except to conclude that "no fraud has occurred." Even if this conclusion were entitled to preclusive effect, it would not assist the Court in ruling on the § 523(a)(4) claim.

Similarly, Defendant's affidavit cannot be used to contradict the State Court's finding about Defendant's state of mind. Having determined that the Findings and Conclusions are entitled to preclusive effect, Defendant cannot relitigate any of those findings in this adversary proceeding. Defendant's affidavit is an attempt to do so, and therefore must be disregarded.

D.   Section 523(a)(6). This section excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."

> Nondischargeability under § 523(a)(6) requires proof of two elements-that the injury is both willful and malicious. *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004) (holding that there must be proof of both a "willful act" and "malicious injury" to establish nondischargeability under § 523(a)(6)); *see also Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley),* 235 B.R. 651 (10th Cir. BAP 1999) (collecting opinions interpreting § 523(a)(6)). A "willful act" is one in which the debtor must "'desire ... [to cause] the consequences of his act or ... believe [that] the consequences are substantially certain to result from it.' " *Moore,* 357 F.3d at 1129 (quoting *Longley,* 235 B.R. at 657. ) A malicious injury occurs when there is proof that the debtor either intended the resulting injury or intentionally took action that was substantially certain to cause the injury. *Id.* The test for this element is a subjective one: the court must determine what the debtor knew or intended with respect to the consequences of his actions. *Id.* The creditor bears the burden of establishing nondischargeability by a preponderance of the evidence. *Holaday v. Seay (In re Seay),* 215 B.R. 780, 785 (10th Cir. BAP 1997).

*In re Shore,* 317 B.R. 536 (10th Cir. BAP 2004). Embezzlement and conversion can come within this exception. *See In re Day,* 2012 WL 4627484, at *16 (Bankr. D. Ariz. 2012). Losses caused by negligence do not. *See In re Moore,* 357 F.3d 1125 (10th Cir. 2004) (claim does not fall within § 523(a)(6) because debtor did not intend to cause creditor's injuries).

-10-

Defendant's conversion[4] of the Property was "willful" under the standards set out above—she acted intentionally, seeking to own the Property. Furthermore, Defendant knew that taking the Property would injure Decedent's estate, by depriving it of a valuable asset. The taking therefore was "malicious" in the sense that Defendant intended the resulting injury to Decedent's estate. The Motion therefore should be granted with respect to the § 523(a)6 count.

E. <u>Amount of Nondischargeable Debt</u>. The following amounts awarded by the State Court to Plaintiffs in the Judgment are nondischargeable:

$17,848.97 (reinstatement of the mortgage on the Property);
$ 1,750.00 (for clean-up of the Property);
$ 2,156.00 (attorney fees incurred in the Probate Action);
$ <u>1,774.25</u> (attorney fees incurred in the Foreclosure Action through May 30, 2010).
Total: $<u>23,529.22</u>.

In addition, if the State Court awarded any amounts for attorney fees incurred after May 30, 2010,[5] such amounts shall also be nondischargeable. Post-judgment interest of 8.75% was also awarded, and is part of the nondischargeable debt.

## IV. CONCLUSION

The Court will grant the Motion with respect to the Plaintiffs' § 523(a)(4) and (a)(6) claims. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. An appropriate judgment will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered On Docket: 7/30/13

---

[4] Defendant's actions constitute conversion. *See Santillo v. N.M. Dept. of Public Safety,* 143 N.M. 84, 173 P.3d 6 (Ct. App. 2007) (Conversion is the unlawful exercise of dominion and control over property belonging to another in exclusion or defiance of the owner's rights).
[5] See Judgment, p. 5.

-11-

Copy to:

Michael K. Daniels
P.O. Box 1640
Albuquerque, NM 87103

Albert W. Schimmel III
P.O. Box 8
Albuquerque, NM 87103

-12-